Oscar LONGORIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–87–00276–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 29, 1988.

Rehearing Denied March 30, 1988.

Mark Vela, Houston, for appellant.

Rolando Ramirez, Dist. Atty., Alice, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

BUTTS, Justice.

Appellant pled guilty to the offense of aggravated possession of marihuana in the amount of more than fifty pounds but less than two hundred pounds. TEX.REV.CIV. STAT.ANN. art. 4476–15, § 4.051(d)(1) (Vernon Supp.1988). The court assessed punishment at five years' imprisonment.

The one point of error is that his motion to suppress should have been granted because the evidence was illegally obtained.

At the hearing on suppression the State presented evidence through two Texas Department of Public Safety Troopers, Martin Cuellar and Antonio Rodriguez. Appellant presented no evidence.

On February 14, 1987, about 9:00 p.m., appellant drove his pickup with camper north on Highway 281 just south of Alice. The troopers' vehicle, going in the same direction, was ahead of appellant. They testified that his truck came up behind them with the "high" headlights on and that appellant failed to dim them as he passed the police car. Both testified this is a traffic violation. TEX.REV.CIV.STAT. ANN. art. 6701d, § 127(c) prohibits the driver of a vehicle from using "high" headlights within 300 feet of another vehicle when approaching from the rear.

The troopers stopped appellant's truck for the violation. After obtaining appellant's driver's license, the lead trooper asked appellant what he had in the back of the camper. This was after he saw "something covered up with a rug." They were standing at the back of the pickup. The officer asked appellant if he would open the back of the camper.

A: I asked him for a consent to look in the back.

Q: And what did he tell you?

A: He opened it himself.

Q: And then what?

A: As soon as he opened it up, I could smell a strong odor of marihuana.
[It was stated that appellant "closed it up real quick."]

Q: What did you do after he closed it up and you smelled it?

A: I opened it up back (sic) again myself ... could see the packages exposing (sic) from the carpet ...

The officer placed appellant under arrest; *Miranda* rights were given. Ten packages of marihuana were confiscated from the camper.

On cross-examination the same officer testified that after the stop and as he was standing by the truck, he saw something covered up and had a "hunch" it was illegal.

Q: Okay. So at that point you decided that you were going to get permission to go into that truck.

A: Correct.

Q: ... you had inquired of Mr. Longoria for his consent to search the back of that vehicle, right?

A: Yes, sir.

Q: What would you have done if he had said no?

A: I wouldn't have searched it.

 \* \* \* \* \* \*

Q: You would have let him go?

A: Yes, sir.

 \* \* \* \* \* \*

Q: Okay, at any rate you indicated that he said yes, to—

A: He said yes.

 \* \* \* \* \* \*

Q: ... He didn't say yes, you can go in there, isn't that true? He told you what he had and you decided to go in there anyway.

A: No, sir, he gave me consent. He even opened it himself.

 \* \* \* \* \* \*

A: No, I didn't told (sic) him I was going to do it anyway. I asked him for his consent.

 \* \* \* \* \* \*

The officer testified that when appellant opened the glass window and gate of the camper, he smelled the odor of marihuana. The second officer stated he "noticed that Mr. Longeria opened the truck." He then stepped to the back and he also smelled marihuana.

The State maintains that appellant gave voluntary consent to the officer to open the camper. The evidence before the court shows that appellant himself opened the glass and gate of the vehicle. Thus there was a valid basis in law for the constitutionally protected area. It is further the State's contention that the strong odor of marihuana emanating from the rug covering gave rise to probable cause for the officers to search for that controlled substance. *See Aldridge v. State,* 482 S.W.2d 171, 174 (Tex.Crim.App.1972).

In *Paulus v. State,* 633 S.W.2d 827, 850 (Tex.Crim.App.1982) it was written:

It is well settled that when the State relies on a consent to search, the burden of proof is on the prosecution to show by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Paprskar v. State,* 484 S.W.2d 731 (Tex. Crim.App.1972); *Kolb v. State,* 532 S.W. 2d 87 (Tex.Crim.App.1976). The prosecution must show the consent given was positive and unequivocal and there must not be duress or coercion, actual or implied. The burden is not discharged if the prosecution does not show more than an acquiescence to a claim of lawful authority. *Allen v. State,* 487 S.W.2d 120 (Tex.Crim.App.1972). Whether the consent relied upon is a valid one is determined from the totality of the circumstances. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Paprskar v. State, supra.*

It is not appellant's contention that the officers had no right to stop his vehicle for a traffic violation. His argument is that there existed no probable cause to search the vehicle.

 The evidence supports the trial court's conclusion that the consent was freely and voluntarily given. Once appellant opened the back of the vehicle, the first officer and then the second officer smelled the odor of marihuana. Probable cause arose at that time for the officer to believe a crime had been or was being committed. *See Brown v. State,* 481 S.W. 2d 106 (Tex.Crim.App.1972). The ensuing search was not unlawful.

The trial court did not err in denying the motion to suppress the evidence. The judgment is affirmed.